IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

RICHARD I. DAN,

          Plaintiff,

   vs.

ALBAR PRECIOUS METAL
REFINING, INC. AND CASH4GOLD,
LLC,

          Defendants.

CIVIL NO.  08-00150 JMS/LEK

MEMORANDUM IN SUPPORT OF
MOTION

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................... 1

II.  RELEVANT FACTS ................................................................ 1

III. THE STANDARD FOR SUMMARY JUDGMENT UNDER
     FEDERAL RULE OF CIVIL PROCEDURE 56 ......................... 5

IV.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT IN
     THEIR FAVOR ON ALL OF PLAINTIFF'S CLAIMS. ................ 7

     A.  The DCCA's Decision On Secondary Meaning Must Be Given
         Preclusive Effect In This Litigation .................................... 7

         1.  The DCCA Was Acting In A Judicial Capacity ...................... 9

         2.  The Disputed Issue Of Secondary Meaning Was Properly
             Before The DCCA ................................................................. 10

         3.  Plaintiff Had An Adequate Opportunity To Litigate The
             Issue Of Secondary Meaning ................................................ 12

         4.  Precluding Relitigation of the Issue of Secondary
             Meaning Will Conserve Judicial Resources And Avoid
             Unnecessary Costs And Repetitive Litigation ...................... 13

     B.  Defendants Are Entitled To Summary Judgment On All of
         Plaintiff's Claims ............................................................... 13

         1.  Defendants Are Entitled to Summary Judgment On
             Plaintiff's Lanham Act Claim (Count I) ............................... 14

         2.  Defendants Are Entitled to Summary Judgment On All of
             Plaintiff's State Law and Common Law Claims (Counts
             II-V) .................................................................................... 16

V.   CONCLUSION ...................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970)...................................... 6

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)........................................ 6, 7

Carroll v. Maui County, 866 F. Supp. 459 (D. Haw. 1994) ........................... 8, 9, 10

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ........................................... 6

Committee for Idaho's High Desert, Inc. v. Yost,
    92 F.3d 814 (9th Cir. 1996) ..................................................... 4

Eilrich v. Remas, 839 F.2d 630 (9th Cir. 1988)........................................ 9

Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135 (9th Cir. 2002) ...................... 14

Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.,
    198 F.3d 1143 (9th Cir. 1999) ................................................. 15

Guild Wineries and Distilleries v. Whitehall Co.,
    853 F.2d 755 (9th Cir. 1988) ................................................. 10

Levi Strauss & Co. v. Blue Bell, Inc.,
    778 F.2d 1352 (9th Cir. 1985) ................................................. 7

Matsushita Electric Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986)......................................................... 6

Surfvivor Media, Inc. v. Survivor Prods., 406 F.3d 625 (9th Cir. 2005) ............... 15

T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,
    809 F.2d 626 (9th Cir. 1987) ................................................. 6

University of Tennessee v. Elliott, 478 U.S. 788 (1986).................................. 8, 13

Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc.,
    419 F.3d 925 (9th Cir. 2005) ................................................. 15

## STATE CASES

Carrington v. Sears, Roebuck & Co.,
    5 Haw. App. 194 (Haw. Ct. App. 1984) ..................................................... 11, 17

Kauhane v. Acutron Co., 795 P.2d 276 (Haw. 1990) ........................................... 13

Meridian Mortgage, Inc. v. First Hawaiian Bank,
    122 P.3d 1133 (Haw. Ct. App. 2005) ................................................................ 18

Pele Defense Fund v. Paty, 837 P.2d 1247 (Haw. 1992)...................................... 12

## STATUTES AND RULES

Hawaiʻi Revised Statutes § 480-2 ......................................................................... 17

Hawaiʻi Revised Statutes §480-13 ........................................................................ 17

Hawaiʻi Revised Statutes Chapter 481A ......................................................... 16, 17

Hawaiʻi Revised Statutes § 481A-3 ................................................................ 16, 17

Hawaiʻi Revised Statutes § 482-8.5 ............................................................. 2, 3, 11

Hawaiʻi Revised Statutes § 482-9 ........................................................................ 12

Hawaiʻi Revised Statutes § 482-21 ...................................................................... 11

Hawaiʻi Revised Statutes § 482-28.5 ............................................................... 2, 11

Federal Rules of Civil Procedure Rule 56 .............................................................. 5

## OTHER AUTHORITIES

J. Thomas McCarthy, McCarthy On Trademark and Unfair Competition
    (2002) § 11:16 ................................................................................................... 15

<u>MEMORANDUM IN SUPPORT OF MOTION</u>

## I.    INTRODUCTION

Plaintiff filed this action against Defendants claiming that Defendants'
use of the mark "Cash4Gold" in Hawai´i violated federal and state law.  All of
Plaintiff's legal claims are based on the core allegation that Plaintiff's descriptive
phrase, "Cash for Gold," is entitled to protection.  A descriptive phrase can only
receive trademark protection if it has acquired distinctiveness by Plaintiff showing
that the phrase has secondary meaning in the marketplace.  However, this central
issue has already been resolved in a state administrative agency decision, which
must be given preclusive effect in this Court.  Specifically, the factual
determination by the State of Hawai´i Department of Commerce and Consumer
Affairs that Plaintiff's phrase, "Cash for Gold," has not acquired secondary
meaning must be given preclusive effect by this Court.  Accordingly, Plaintiff is
unable to meet his burden of proof as a matter of law and Defendants are entitled
to summary judgment on all of Plaintiff's claims.

## II.   RELEVANT FACTS

The facts relevant to the preclusive effect of the prior state agency
determination are undisputed.

On June 24, 2008, Plaintiff filed two petitions with the State of
Hawai´i's Department of Commerce and Consumer Affairs ("DCCA") against a

Hawai′i corporation named "Cash4Gold Corporation dba Maki Gold," who purportedly owned the mark "Cash4Gold Maki Gold." See Hearings Officer's Findings of Fact, Conclusions of Law, and Recommended Order in the Matter of the Corporate Name "CASH4GOLD CORPORATION DBA MAKI GOLD," CN 2008-2, filed with the DCCA on March 19, 2009, enclosed with the letter from Sheryl Lee A. Nagata, DCCA Administrative Hearings Officer, to Paul Maki and Danilo Napala, dated March 19, 2009, attached as Exhibit A to the Affidavit of John R. Lacy, and Hearings Officer's Findings of Fact, Conclusions of Law, and Recommended Order in the Matter of the Trademark "CASH4GOLD MAKI GOLD," TM 2008-2, filed with the DCCA on March 19, 2009, enclosed with the letter from Sheryl Lee A. Nagata, DCCA Administrative Hearings Officer, to Paul Maki and Danilo Napala, dated March 19, 2009, attached as Exhibit B to the Affidavit of John R. Lacy (collectively "Recommended Orders"). In his petitions to the DCCA, Plaintiff sought two forms of relief: (1) revocation of the trademark "Cash4Gold Maki Gold" under Hawai′i Revised Statutes section 482-28.5; and (2) an order of abatement of the alleged trademark infringement under Hawai′i Revised Statutes section 482-8.5. Recommended Orders at 3.

On December 4, 2008, a hearing was held on Plaintiff's two petitions before a DCCA Hearings Officer. Recommended Orders at 1. Plaintiff was represented during that hearing by counsel, Paul Maki, Esq. Id.

On March 19, 2009, the DCCA Hearings Officer issued her

Recommended Orders after "[h]aving reviewed and considered the evidence and

argument presented at the hearing, together with the entire record of this

proceeding." Id. The Hearings Officer examined the strength of Plaintiff's phrase

"Cash for Gold" and found that "Cash for Gold" was not entitled to protection

because no secondary meaning was shown. Id. at 5.

On April 20, 2009, Plaintiff submitted exceptions to the Hearing

Officer's Recommended Orders. See Petitioner's Exceptions to Hearing [sic]

Officer's Findings [o]f Fact, Conclusions of Law and Recommended Orders Dated

March 19, 2009 ("Petitioner's Exceptions"), attached as Exhibit C to the Affidavit

of John R. Lacy. Plaintiff took exception to the Hearings Officer's findings of fact

regarding secondary meaning. Id. at 3. Plaintiff asserted that he had presented

"more than sufficient evidence of secondary meaning" and requested that the

Hearings Officer's finding that "Cash for Gold" had not acquired the requisite

secondary meaning be deleted from the final order. Id. Plaintiff highlighted the

testimony that he provided as well as the evidence that he submitted to the

Hearings Officer that he claimed provided support for his position on the issue of

secondary meaning. Id. at 4-5.

On June 8, 2009, the Director of the DCCA, Office of Administrative

Hearings, Business Registration Division issued the Director's Final Orders

dismissing Plaintiff's petitions. See Director's Final Order in the Matter of the Corporate Name "CASH4GOLD CORPORATION DBA MAKI GOLD," CN 2008-2, filed with the DCCA on June 8, 2009, attached as Exhibit D to the Affidavit of John R. Lacy, and the Director's Final Order in the Matter of the Trademark "CASH4GOLD MAKI GOLD," TM 2008-2, filed with the DCCA on June 8, 2009, attached as Exhibit E to the Affidavit of John R. Lacy (collectively "Final Orders"). The Final Orders considered the entire record in the matter, including Plaintiff's exceptions, and adopted the Hearing Officer's recommendations, with one modification. Final Orders at 1. The Final Orders clarified the findings regarding secondary meaning. Id. Specifically, the DCCA found that "the evidence presented was insufficient to establish that 'Cash for Gold' had acquired the requisite secondary meaning." Id. The DCCA noted that several factors are considered in determining whether secondary meaning has been shown. Id. The DCCA found that although Plaintiff presented some evidence "regarding the degree and manner of advertising and the length and manner of use" this evidence was insufficient to establish secondary meaning. Id. The DCCA found that the evidence presented by Plaintiff "did not show 'whether actual purchase[r]s of the product bearing the claimed trademark associate the trademark with the producer' and 'whether use of the claimed trademark has been exclusive.'" Id. at 2 (citing Committee for Idaho's High Desert, Inc. v. Yost, 92

F.3d 814, 822 (9th Cir. 1996)).  Accordingly, the DCCA concluded that the

evidence presented by Plaintiff was insufficient to establish that "Cash for Gold"

had acquired the requisite secondary meaning.  See Final Orders at 1-2.

Ultimately, the DCCA dismissed Plaintiff's petitions for revocation and for an

order of abatement, concluding that Plaintiff had failed to establish that

"Cash4Gold Corporation dba Maki Gold" was "substantially identical" to "Cash

for Gold" or that there was a likelihood of confusion from the use of "Cash4Gold

Corporation dba Maki Gold." Id. at 2.

 As detailed below, Plaintiff is precluded from relitigating the issue of

secondary meaning in this pending litigation.  In his Complaint, Plaintiff asserts

claims against Defendants for federal trademark infringement and related state law

claims, (Complaint ¶¶ 13-29), which all require a showing of secondary meaning.

Accordingly, Defendants are entitled to summary judgment on all of Plaintiff's

federal and state law claims.

## III. THE STANDARD FOR SUMMARY JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 56.

 Rule 56(c) provides that summary judgment shall be entered when:

> [T]he pleadings, depositions, answers to interrogatories,
> and admissions on file, together with the affidavits, if
> any, show that there is no genuine issue of material fact
> and that the moving party is entitled to judgment as a
> matter of law.

Fed. R. Civ. P. 56(c). The moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970)). Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. Fed. R. Civ. P. 56(e). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987); Fed. R. Civ. P. 56(e).

There is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citation omitted). A material fact is one that may affect the decision, so that the finding of that fact is relevant and necessary to the proceedings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the nonmoving party. Id. In ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law. Id. at 254. The court must assess the adequacy of the nonmovant's response and must determine whether the showing

the nonmovant asserts it will make at trial would be sufficient to carry its burden of

proof.  See id. at 322.

## IV.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT IN THEIR FAVOR ON ALL OF PLAINTIFF'S CLAIMS.

The DCCA made a factual determination that Plaintiff's phrase "Cash

for Gold" had not acquired secondary meaning.  This factual finding by a state

agency should be given preclusive effect by this Court and prevent Plaintiff from

relitigating the issue of secondary meaning in this action.[1]  Given the prior

determination that Plaintiff's phrase has not acquired secondary meaning,

Defendants are entitled to summary judgment on all of Plaintiff's claims because

the issue of secondary meaning is at the core of each claim.

### A.   The DCCA's Decision On Secondary Meaning Must Be Given Preclusive Effect In This Litigation.

The DCCA's determination on the issue of secondary meaning

precludes the relitigation of that issue in this action.  An unreviewed determination

of a state administrative agency, like the DCCA's determination at issue here, has

preclusive effect in federal court if the following three requirements are satisfied:

(1) The state agency was acting in a judicial capacity;

(2) The disputed issue was properly before the agency; and

---

[1] There can be no dispute that the DCCA's determination regarding secondary meaning was one of fact.  See Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1355 (9th Cir. 1985) ("The question of secondary meaning is one of fact.").

      (3) The party had an adequate opportunity to litigate the issue before
the state agency.

Carroll v. Maui County, 866 F. Supp. 459, 465 (D. Haw. 1994) (citing University

of Tennessee v. Elliott, 478 U.S. 788, 799 (1986) ("when a state agency acting in a

judicial capacity resolves disputed issues of fact properly before it which the

parties have had an adequate opportunity to litigate, federal courts must give the

agency's fact finding the same preclusive effect to which it would be entitled in the

State's courts.")).

      Each of the three requirements outlined above is satisfied in this case.

First, the DCCA was acting in a judicial capacity in deciding whether to grant

Plaintiff's petitions.  Second, the issue of secondary meaning was properly before

the DCCA as it considered Plaintiff's claims for revocation and for abatement of

infringement of his trade name.  Third, Plaintiff had an adequate opportunity to

litigate the issue before the DCCA.

      Moreover, the policy underlying the doctrine of issue preclusion

applies with full force to the facts and circumstances here.  As the Supreme Court

recognized in University of Tennessee v. Elliott, "giving preclusive effect to

administrative fact-finding serves the value underlying general principles of

collateral estoppel: enforcing repose.  This value, which encompasses both the

parties' interest in avoiding the cost and vexation of repetitive litigation and the

public's interest in conserving judicial resources is equally implicated whether fact-finding is done by a federal or state agency." 478 U.S. at 798. Giving preclusive effect to the DCCA's factual determination in this case will curb vexation of repetitive litigation by barring Plaintiff from rolling the dice in various forums until he receives the finding that he is seeking. It will also conserve judicial resources and avoid unnecessary costs of litigation because the penultimate issue – whether Plaintiff has trademark rights in the phrase "Cash for Gold" – has already been finally decided and should not be litigated again.

### 1.     The DCCA Was Acting In A Judicial Capacity.

First, the undisputed facts demonstrate that the DCCA was acting in a judicial capacity. In applying this first requirement, courts examine the character of the state administrative agency proceedings to determine whether the agency was acting in a judicial capacity. See Carroll, 866 F. Supp. at 466-67. Courts consider whether the plaintiff was able to present evidence and testimony at a hearing, whether the legal issues were briefed, whether the parties were represented by counsel, and how the hearing officer reached its decisions. Id. Generally, if the hearing officer "applied an established rule to specific existing facts rather than establishing a rule of law applicable to future cases, he acted in a judicial capacity." Id. at 467 (quoting Eilrich v. Remas, 839 F.2d 630, 634 (9th Cir. 1988)).

Here, a consolidated hearing was held on Plaintiff's petitions to revoke the trademark and for abatement of trademark infringement on December 4, 2008.  Recommended Orders at 1.  Plaintiff was represented during these proceedings before the DCCA by the same counsel representing him in this action. See id.; Petitioner's Exceptions; Final Orders at 1.  Plaintiff presented documentary evidence and testimony to the DCCA Hearings Officer during the hearing. Recommended Orders at 1.  Petitioner's Exceptions at 4-5; Final Orders at 1. Additionally, Plaintiff's counsel filed written exceptions, which reiterated the evidence presented on the specific issue of secondary meaning and provided additional legal argument.  Petitioner's Exceptions at 4-6.  After considering the entire record before it, the DCCA issued its Final Orders examining the evidence presented in light of the governing legal standard, including the Ninth Circuit's standard for establishing secondary meaning.  Final Orders at 1-2.  Given the nature of the proceedings and the analysis applied by the DCCA, the state agency was acting in a judicial capacity.

### 2.     The Disputed Issue Of Secondary Meaning Was Properly Before The DCCA.

The disputed issue regarding secondary meaning was properly before the DCCA.  The Ninth Circuit has stated that "an issue is properly before an administrative tribunal if that body has jurisdiction to decide it."  Guild Wineries

and Distilleries v. Whitehall Co., 853 F.2d 755, 759 (9th Cir. 1988).  Whether the

agency has jurisdiction to decide an issue is a matter of state law.  Carroll, 866 F.

Supp. at 467.

   As noted above, Plaintiff's petitions requested revocation and an order

of abatement of trademark infringement under Hawai'i Revised Statutes sections

482-8.5 and 482-28.5.  Recommended Orders at 1.  Under these statutory

provisions, the agency is charged with determining whether a trademark is

"confusingly similar" to another trade name or mark and whether a mark would

"cause confusion or mistake."  See H.R.S. § 482-8.5; § 482-21.  Determining

whether Plaintiff's mark has acquired secondary meaning is the first step in this

analysis because without proof of secondary meaning, a mark is not entitled to

protection from alleged confusion.  See Carrington v. Sears, Roebuck & Co., 5

Haw. App. 194, 204 (Haw. Ct. App. 1984) ("A 'descriptive' mark is one which

tells something about the product and will only be protected where a secondary

meaning is shown."); see also Recommended Orders at 5 ("Names that are

descriptive are not entitled to protection in the absence of a showing of secondary

meaning."); Final Orders at 1-2.  Accordingly, the issue of "secondary meaning"

was properly before the agency.

### 3.   Plaintiff Had An Adequate Opportunity To Litigate The Issue Of Secondary Meaning.

Finally, the undisputed facts demonstrate that Plaintiff had a full and fair opportunity to litigate the issue.  In <u>Pele Defense Fund v. Paty</u>, the Hawaii Supreme Court analyzed "fully and fair opportunity to litigate," stressing several factors including the opportunity for an evidentiary hearing, the availability of appeal, and the presence of counsel.  837 P.2d 1247 (Haw. 1992).  Here, Plaintiff had an evidentiary hearing before the DCCA Hearings Officer at which time he presented documentary evidence and testimony.  <u>See</u> Petitioner's Exceptions at 4-5.  Additionally, Plaintiff submitted additional argument on the specific issue of secondary meaning in Petitioner's Exceptions.  Although Plaintiff chose not to do so, he had the opportunity to appeal the decision of the DCCA to the Circuit Courts of Hawaii.  <u>See</u> H.R.S. § 482-9.  Importantly, Plaintiff was represented by counsel during the administrative agency process who presented arguments and written briefs in support of Plaintiff's petitions and, indeed, is the same counsel representing Plaintiff in this action.  <u>See</u> <u>id.</u>; Recommended Orders at 1; Final Orders at 1.  Plaintiff had a full and fair opportunity to litigate the issue of secondary meaning before the DCCA.

4. **Precluding Relitigation of the Issue of Secondary Meaning Will Conserve Judicial Resources And Avoid Unnecessary Costs And Repetitive Litigation.**

In addition to having satisfied each of the three requirements for preclusion, the underlying policies served by preclusion support giving preclusive effect to the DCCA's factual determination in this case. Specifically, preclusion is soundly applied by the courts to conserve judicial resources and avoid repetitive litigation. See University of Tennessee v. Elliott, 478 U.S. at 798. The doctrine "permits every litigant to have an opportunity to try his case on the merits; but it also requires that he be limited to one such opportunity." Kauhane v. Acutron Co., 795 P.2d 276, 279 (Haw. 1990) (citations omitted). Here, Plaintiff has already had a full and fair opportunity to litigate the issue of secondary meaning before the state agency. Plaintiff's attempt to re-litigate the same issue in hopes of achieving a different result in this litigation is exactly the type of repetitive litigation that preclusion is intended to avoid. Having satisfied all of the requirements for preclusion, this Court should give preclusive effect to the DCCA's factual determination that Plaintiff's mark "Cash for Gold" does not have the requisite secondary meaning.

B. **Defendants Are Entitled To Summary Judgment On All of Plaintiff's Claims.**

Plaintiff's Complaint alleges that Defendants' use of the mark

CASH4GOLD for mail-in refining services infringes Plaintiff's alleged rights in the phrase "Cash for Gold" for Plaintiff's pawnshop services in violation of federal and state law.  To succeed on every one of Plaintiff's claims, Plaintiff must prove that the phrase "Cash for Gold" is entitled to trademark protection because it has acquired secondary meaning for Plaintiff's pawnshop services.  Plaintiff cannot establish this essential element of his claims because the state agency's determination that the phrase "Cash for Gold" has not acquired secondary meaning for Plaintiff's services must be given preclusive effect by this Court.  Because Plaintiff cannot establish the threshold element for each and every one of his claims as a matter of law, Defendants are entitled to summary judgment in their favor on Plaintiff's Complaint.

### 1. Defendants Are Entitled to Summary Judgment On Plaintiff's Lanham Act Claim (Count I).

Defendants are entitled to summary judgment on Plaintiff's Lanham Act claim because Plaintiff cannot raise a genuine issue of material fact that its descriptive phrase "Cash for Gold" has acquired secondary meaning for Plaintiff's pawnshop services.[2]  Under federal trademark law, a descriptive phrase is only

---

[2]      Plaintiff's phrase "Cash for Gold" is descriptive of Plaintiff's pawnshop services because the phrase describes the very service that Plaintiff's pawnshop offers to the public – the payment of cash in exchange for gold.  See Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1141-42 (9th Cir. 2002) (explaining that descriptive marks define qualities or characteristics of a product in a

entitled to protection if Plaintiff can establish secondary meaning.  See Yellow Cab

Co. v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 927 (9th Cir. 2005) ("A

descriptive mark can receive trademark protection if it has acquired distinctiveness

by establishing 'secondary meaning' in the marketplace.") (citing Filipino Yellow

Pages, Inc. v. Asian Journal Publ'ns, Inc., 198 F.3d 1143, 1147 (9th Cir. 1999));

Surfvivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 632 (9th Cir. 2005)

("These [descriptive] marks define a particular characteristic of the product in a

way that does not require any exercise of the imagination.  ...  Because these

marks merely describe a characteristic of the product, they do not receive any

trademark protection unless they acquire sufficient 'secondary meaning' to create

an association between the mark and the product." (citations omitted)).

        Here, Plaintiff is precluded from relitigating the issue of secondary

meaning as a matter of law because that issue has already been decided by the

Final Orders of the DCCA.  Accordingly, there is no genuine issue of material fact

regarding Plaintiff's ability to demonstrate secondary meaning in the phrase "Cash

for Gold" and, therefore, Defendants are entitled to summary judgment on

Plaintiff's Lanham Act claim.

---

straightforward way that requires no exercise of the imagination to be understood);
see also J. Thomas McCarthy, McCarthy On Trademark and Unfair Competition
(2002) § 11:16.

2.    **Defendants Are Entitled to Summary Judgment On All of Plaintiff's State Law and Common Law Claims (Counts II-V).**

In addition to its Lanham Act claim, Plaintiff alleges various state law and common law claims against Defendants based on Cash4Gold's use of the mark CASH4GOLD for mail-in refining services.[3] <u>See</u> Complaint ¶¶ 20-29. Defendants are entitled to summary judgment on all of these claims because Plaintiff cannot raise a genuine issue of material fact that it has acquired secondary meaning in the phrase "Cash for Gold", which is a requisite element for each of these claims.

First, regarding Plaintiff's statutory and common law claims for trademark infringement, Plaintiff alleges a claim under the Hawaii Uniform Deceptive Trade Practices Act, Chapter 481A, Hawaii Revised Statutes and a general common law claim for infringement. Complaint ¶¶ 21 and 29. The only infringement or deceptive trade practice alleged by Plaintiff is Defendant's alleged use of "plaintiffs name and mark" – Cash for Gold, which Plaintiff contends has created confusion in the marketplace. <u>See</u> Complaint ¶ 22-24.

Under Hawaii law, "[a]n alleged trademark infringement may…give rise to a deceptive trade practices action under HRS § 481A-3, which provides protection against the marketing of products or services in a manner which causes

---

[3]    Plaintiff's Complaint also includes a separate count for "Monetary Recovery." Although Defendants do not concede that such a legal claim exists, it is likewise barred.

a 'likelihood of confusion' as to their source, sponsorship, approval, or certification or as to their affiliation, connection or association with products or services already established in the marketplace." <u>Carrington v. Sears, Roebuck & Co.</u>, 5 Haw. App. 194, 198 (Haw. Ct. App. 1984). In <u>Carrington</u>, the Hawaii Intermediate Court of Appeals held that that the "likelihood of confusion" test is determinative of whether a trade practice is deceptive under HRS § 481A-3. <u>Id</u>. at 198-99. The court recognized that this was also the prevailing test in common law and federal trademark law infringement cases. <u>Id</u>. at 199. In applying this test in situations involving descriptive marks, the Court held that such marks "will only be protected where a secondary meaning is shown." <u>Id</u>. at 204.

Here, the state agency has already determined that Plaintiff's phrase "Cash for Gold" has not acquired the requisite secondary meaning. As detailed above, Plaintiff is precluded from relitigating that issue in this Court. Therefore, Plaintiff's phrase "Cash for Gold" is not entitled to protection under Chapter 481A or under the common law and Defendants are entitled to summary judgment on Plaintiff's deceptive trade practices and common law infringement claims.

Second, Defendants are also entitled to summary judgment on Plaintiff's statutory and common law claims for unfair competition (Count III and Count IV). Plaintiff alleges a claim against Defendants for unfair competition under Sections 480-2 and 480-13, Hawaii Revised Statutes and under the general

17

common law.  Complaint ¶ 26, ¶ 29.  The Hawaii Court of Intermediate Appeals has held that in order to prevail on an action for unfair competition, "the plaintiff must establish "consumer-confusion between the two products because plaintiff's product had acquired a secondary meaning." <u>Meridian Mortgage, Inc. v. First Hawaiian Bank</u>, 122 P.3d 1133, 1147 (Haw. Ct. App. 2005).

Here, the state agency has already determined that Plaintiff's mark has not acquired the requisite secondary meaning.  As detailed above, Plaintiff is precluded from relitigating that issue in this Court.  Because Plaintiff cannot meet its burden of proof regarding secondary meaning, its statutory and common law unfair competition claims fail as a matter of law.  Therefore, Defendants are entitled to summary judgment on Plaintiff's deceptive trade practices and common law infringement claims.

## V.   CONCLUSION

Based on the foregoing, Defendants respectfully requests that this Court grant summary judgment in favor of Defendants on all of Plaintiff's claims and dismiss Plaintiff's Complaint in its entirety.

DATED: Honolulu, Hawaii, August 27, 2009.


JOHN R. LACY
HARA K. JACOBS

Attorney for Defendants
ALBAR PRECIOUS METAL
REFINING, INC. and
CASH4GOLD, LLC

19